IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

CRAIG CUNNINGHAM,

      Pro Se Plaintiff,

v.

                                   Civil Action No. 1:14cv169
                                   MDL No. 1:13-MD-2493
                                   The Honorable Irene M. Keeley

ALLIANCE SECURITY, MONITRONICS,
2 GIG TECHNOLOGY, JASIT AKA JAY GOTRA,
UTC FIRE AND AMERICA'S CORPORATION,
SECURE 1 SYSTEM, MIKE MAVARRO,
JOHN DOE DEFENDANTS 1-10.

      Defendants.

## REPLY BRIEF OF DEFENDANT 2GIG TECHNOLOGIES INC.

Pursuant to the Court's Order of March 25, 2015, Defendant 2GIG Technologies, Inc. (hereinafter "2GIG" and improperly identified in the amended complaint as 2GIG Technology), by its counsel, Jackson Kelly, PLLC, respectfully submits this brief in reply to the response brief of Plaintiff Craig Cunningham (Doc. No. 153) and in further support of its motion to dismiss the amended complaint (Doc. Nos. 138 and 139).

The primary focus of Plaintiff's response is this Court prior decision in Mey v. Monitronics International, Inc., 959 F.Supp.2d 927, 928 (N.D.W.V. 2013) concerning vicarious liability under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227 et al. After the Federal Communications Commission released its Declaratory Ruling 13-54 ("Declaratory Ruling") and stated that plaintiffs could use principles of agency to seek vicarious liability of sellers, this Court denied motions for summary judgment of Monitronics International, Inc. ("Monitronics") and UTC First and Security Americas Corp., Inc. ("UTC"). Mey, 959 F.Supp.2d

at 932. When applying the analysis followed by this Court to Plaintiff's amended complaint fails

against 2GIG, the vicarious liability claims against 2GIG should be dismissed as a matter of law.

**A.    2GIG is not a "seller" for purposes of Plaintiff's claims under the TCPA.**

In summarizing the Declaratory Ruling in the <u>Mey</u> action, this Court stated:

> The FCC stated that "while *a seller* does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." FCC Declaratory Ruling, ¶ 1. The FCC, however, made plain that *"on behalf of"* liability does not require a formal agency relationship. Id. at ¶ 28. Instead, a plaintiff proceeding under 47 U.S.C. § 227(c) could also use principles of ratification and apparent authority to establish the seller's vicarious liability for the illegal acts of a third-party telemarketer. <u>Id.</u>

<u>Id.</u> (emphasis added). Also, this Court specifically referenced the definition of "seller" provided

in Section 64.1200(f)(9) of Title 47 of the Code of Federal Regulations stating, "The term *seller*

means the person or entity *on whose behalf* a telephone call or message is initiated for the

purpose of encouraging the purchase or rental of, or investment in, property, goods, or services,

which is transmitted to any person." <u>Id.</u> at 933 (emphasis added). Thus, the Court concluded that

"the determination of whether an entity is a "seller" turns on whether a telephone solicitation is

made on its behalf." <u>Id.</u>

The amended complaint lacks any allegation that 2GIG directly placed a single telephone

call to Plaintiff.  In paragraphs 21 and 27 of the amended complaint, however, Plaintiff alleges

indirect communications with 2GIG through public statements made on 2GIG's website. Doc.

No. 97 at ¶¶ 21, 27 (http://2gig.com/contact/faqs).  Plaintiff's response generally summarizes the

"Frequently Asked Questions" page on 2GIG's website and, despite finding it significant enough

to reference in his complaint, Plaintiff asserts that the information is irrelevant to the

determination of whether 2GIG is a seller as defined by the TCPA or whether the alleged

telemarketing calls made by Alliance Security were "on behalf of" 2GIG.  Pl's Resp. at 4.  To

the contrary, when considered in its totality, 2GIG's website demonstrates that 2GIG is not a

"seller" as defined under the TCPA and as further explained by the FCC in its Declaratory

Ruling.

As recognized by this Court in the prior <u>Mey</u> decision, the FCC, through its rules,

expressly defines "seller" and distinguishes a "seller" from a "telemarketer":

> This reading is reflected in our rules, which define "telemarketer" as "'the person
> or entity that initiates a [telemarketing] call,'" and define the separate term
> "seller" as "'the person or entity on whose behalf a [telemarketing] call or
> message is initiated." Our rules thus draw a clear distinction between a call that is
> made by a seller and a call that is made by a telemarketer on the seller's behalf. . .
> .

28 F.C.C.R. 6574, 2013 WL 1934349 (May 9, 2013) at ¶ 27. Accordingly, to be a "seller," a

telemarketing call must be initiated *on behalf of* that entity. When considering the meaning of

"initiate" under the TCPA, the FCC considered and rejected a broad position taken by the States,

similar to the allegations made by Plaintiff in this action:

> The States contend that the seller's involvement in telemarketing calls by third
> parties satisfies this definition because, absent the contractual arrangements by
> which the seller compensates telemarketers, "no third party would ever engage in
> making even legal marketing calls in the attempt to sell the Seller's products
> and/or services." That reading is, in our view, too broad, for it would logically
> encompass a host of activities which have only a tenuous connection with the
> making of a telephone call, but which could be viewed as a "but for" cause of
> such calls. *Thus, for example, the mere fact that a company produces and sells a
> product does not mean that it initiates telephone calls that may be made by
> resellers retailing that product.* Instead, the word "initiate" suggests a far more
> direct connection between a person or entity and the making of a call. . . .

<u>Id</u>. at ¶ 26 (emphasis added).  The FCC then addressed the factual circumstances very similar, if

not identical, to those described on 2GIG's website[1] where a company manufactures and sells a

product to several dealers who then re-sell the product to additional retailers or consumers:

---

[1]      Q: Who was it that called me?

> Finally, we reject DISH's contention in this proceeding that vicarious liability beyond strict, classical agency relationships would extend seller liability to the marketing by "big box stores and national dealers (such as Best Buy, Sears, etc.) who sell numerous manufacturers' products (such as Sony televisions, Whirlpool appliances, etc.)." DISH suggests that, if it is liable for the unlawful telemarketing calls of its third-party retailers, then an unlawful call by an employee of a national retail outlet would "create liability for the business whose brand is on the product being sold ... (e.g., Sony and Whirlpool), even where the business did not use the telephone or otherwise direct and control the big box store salesperson." We note that DISH's hypothetical appears to bear no relationship to the telemarketing model giving rise to the petitions before us in this proceeding. In any event, to the extent that such a store is selling *on its own account — i.e., it has purchased goods from a manufacturer and is re-selling them* — the manufacturer would not be a seller at all.

Id. at ¶ 45 (emphasis added). As the Declaratory Ruling makes clear, a manufacturer is not a

seller to a consumer if the store selling the manufactured product "is selling on its own account –

i.e.- it has purchased goods from a manufacturer and is reselling the*m.*"   Id.

The 2GIG website, including but not limited to its "Frequently Asked Questions"

webpage, demonstrates: (1) 2GIG is a manufacturer of goods; (2) 2GIG does not sell its security

products directly to consumers; (3) 2GIG sells its products to distributors who then re-sell to

other retailers or consumers; and (4) when 2GIG products are sold to distributors, 2GIG has no

relationship with the consumer. Thus, paragraph 17 of the amended complaint is accurate to the

extent that it states any telemarketing calls made by Alliance Security would have been

"marketing products manufactured by 2GIG."   2GIG's website demonstrates that those 2GIG

products were being marketed and sold to consumers by Alliance Security *on its own* behalf.

---

A:  Since our sales/tracking cycle stops with our distributors it is extremely difficult for us to know who our products are being resold to.  However, we are under the impression there may be up to 4000+ alarm companies that offer our products to consumers.  These alarm companies purchase their 2GIG equipment from our authorized distributor channels.

See Def's Mot. at Ex. B (http://2gig.com/contact/faqs).

When Congress enacted the TCPA, it provided an avenue through which to impose liability on businesses which did not physically make telemarketing calls, but utilized third parties to engage in illegal telemarketing calls *on their behalf*. If Alliance Security communicated with consumers through telemarketing calls, it was not acting on 2GIG's behalf. Rather, Alliance Security purchases 2GIG brand products and then re-sells the products to consumers. Thus, if Alliance Security used telemarketing calls to reach consumers, it was acting on *its own behalf* to further *its own interests*. Accordingly, 2GIG is not a seller for purposes of vicarious liability under the TCPA.

**B.     The Allegations Made By Plaintiff In His Amended Complaint Defeat Apparent Authority.**

In applying the Declaratory Ruling to the facts set forth in the motions being considered in the Mey action, the Court noted that both Monitronics and UTC had agreements with VMS that allowed VMS to hold itself out as an "authorized dealer" of their products. Mey, 959 F.Supp.2d at 932-33. This Court concluded that this fact could lead a reasonable fact finder to conclude they "cloaked VMS with the *apparent authority* to act on their behalf." Id. (emphasis added). Significantly, in footnote one of its decision, this Court stated, "As explained in the Declaratory Ruling, "[s]uch '[a]pparent authority holds a principal accountable for the results of a third-party beliefs about an actor's authority to act as an agent when the belief is *reasonable and traceable to a manifestation of the principal."* FCC Declaratory Ruling, ¶ 34 (quoting Restatement Third of Agency § 2.03, cmt. c)." Id. at 932, n. 1 (emphasis added).

"Apparent authority, as defined in § 2.03, is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." Restatement (Third) Of Agency § 3.03 (2006). "Apparent authority is present

only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation." Id. at cmt. b.

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § 2.03 cmt. c (2006). It is well established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent. See Restatement (Third) of Agency § 2.03 cmt. c (2006) ("An agent's success in misleading the third party as to the existence of actual authority does not itself make the principal accountable.").

Plaintiff has not and cannot plead a plausible basis for holding 2GIG's liable under an apparent authority theory. Again, the 2GIG website must be considered in its entirety. The statements made by 2GIG on its website put the public on notice that no alarm system dealer, whether identified as "authorized" or not, had authority to place telemarketing calls on behalf of 2GIG. As stated above, 2GIG does not market directly to consumers. Any contrary belief allegedly held by Plaintiff would be unreasonable in light of the public statements made by 2GIG on its website. Thus, the amended complaint lacks the factual allegations necessary to create apparent authority for Alliance Security's alleged actions under the TCPA.

## IV. CONCLUSION

The amended complaint fails to allege a prima facie case against 2GIG under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, because 2GIG is not a "seller" as defined by the TCPA for purposes of Plaintiff's claims. In the alternative, should the Court find that 2GIG is a "seller" as recognized by the TCPA, Plaintiff has not and cannot plead

sufficient facts to establish apparent authority for Alliance Security's alleged actions as any such belief by Plaintiff would be unreasonable.  Thus, the amended complaint against 2GIG should be dismissed with prejudice.

Respectfully submitted,

**2GIG TECHNOLOGIES, INC.**

By Counsel.

/s/ Wendy G. Adkins
Stephen M. LaCagnin, Esq. (WVSB )
Wendy G. Adkins, Esq. (WVSB #9412)
Jackson Kelly PLLC
150 Clay Street, Suite 500
P.O. Box 619
Morgantown, WV  26507-0619
Tel:     (304) 284-4100
slacagnin@jacksonkelly.com
wgadkins@jacksonkelly.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## AT CLARKSBURG

**CRAIG CUNNINGHAM,**

      *Pro Se* **Plaintiff,**

**v.**

                                      **Civil Action No. 1:14cv169**
                                      **MDL No. 1:13-MD-2493**
                                      **The Honorable Irene M. Keeley**

**ALLIANCE SECURITY, MONITRONICS,
2 GIG TECHNOLOGY, JASIT AKA JAY GOTRA,
UTC FIRE AND AMERICA'S CORPORATION,
SECURE 1 SYSTEM, MIKE MAVARRO,
JOHN DOE DEFENDANTS 1-10.**

      **Defendants.**

---

## CERTIFICATE OF SERVICE

---

I, Wendy G. Adkins, do hereby certify that the following, "**REPLY BRIEF OF DEFENDANT 2GIG TECHNOLOGY,**" was served by electronic means using the CM/ECF system on this 2nd **day of April, 2015**, to the following:

All Counsel of Record

And to the following by U.S. Certified Mail, postage pre-paid, this **2nd day of April, 2015**:

                  Craig Cunningham
                  5543 Edmondson Pike, Suite 248
                  Nashville, TN  37211
                  *Pro Se Plaintiff*

                  /s/ Wendy G. Adkins
                  Wendy G. Adkins, Esquire